IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASSOCIATION OF COMMUNITY ) <br> ORGANIZATIONS FOR REFORM ) <br> NOW (ACORN); PROJECT VOTE; ) <br> and MARYELLEN HAYDEN, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> TOM CORBETT, ATTORNEY ) <br> GENERAL, COMMONWEALTH OF ) <br> PENNSYLVANIA, ) <br> ) <br> Defendant. ) | Civil Action No. 09-951 <br> Judge Nora Barry Fischer |

## MEMORANDUM OPINION

I. **Introduction**

This matter comes before the Court on a motion for judgment on the pleadings filed by the Defendant pursuant to Federal Rule of Civil Procedure 12(c). (Docket No. [49]). For the reasons that follow, that motion will be denied without prejudice.

II. **Background**[1]

The Association of Community Organizations for Reform Now ("ACORN") is a not-for-profit organization incorporated in Louisiana. Docket No. 38 at ¶ 3. During the course of its 40-year history, ACORN has been one of the nation's largest community organizations working on behalf of low- and moderate-income families. *Id.* at ¶ 4. Project Vote is a non-partisan, non-

---

[1]Because this matter comes before the Court on a motion for judgment on the pleadings, the facts presented in the pleadings must be viewed in the light most favorable to the non-moving parties. *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008); *Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289, 290-291 (3d Cir. 1988). Therefore, the Court assumes the truth of the allegations contained in the Plaintiffs' first amended complaint. Docket No. 38.

1

profit organization incorporated in Louisiana. *Id.* at ¶ 5. Its principal office is located in Washington, D.C. *Id.* Since its founding in 1982, Project Vote has assisted millions of low-income and minority citizens with voter-registration procedures. *Id.* Working in conjunction with other civic groups, including ACORN, Project Vote has assisted Pennsylvania citizens with voter-registration procedures since 1982. *Id.* Maryellen Hayden ("Hayden") is a Pennsylvania resident who has served as the head organizer for ACORN's offices in Pittsburgh, Pennsylvania. *Id.* at ¶ 8. She directed ACORN's voter-registration drives in Pittsburgh during the 2008 election season. *Id.*

In anticipation of the 2008 election, ACORN hired approximately 300 canvassers to assist low-income and minority residents of Allegheny County, Pennsylvania, with voter-registration procedures. *Id.* at ¶ 19. Between January and October of 2008, ACORN submitted approximately 40,000 voter-registration applications to the Allegheny County Elections Division ("Elections Division"). *Id.* Project Vote and Hayden were involved in ACORN's activities during that period of time. *Id.* at ¶ 20.

In accordance with internal policies that applied nationwide, ACORN and Project Vote submitted to the Elections Division all voter-registration applications collected by their canvassers, including those which appeared to be problematic or deficient. *Id.* at ¶ 36. This practice was in conformity with a request that had been made by Elections Division personnel. *Id.* at ¶ 37. Applications deemed to be defective or questionable were separated from the other applications and submitted with cover sheets flagging them for Elections Division officials. *Id.* at ¶ 38. Under the guidance of Project Vote, ACORN adhered to this practice throughout the 2008 election season. *Id.* at ¶ 40. Between March and October of 2008, ACORN identified 216

2

applications as "problematic" and called them to the attention of Elections Division personnel. *Id.* at ¶ 45.

In March 2008, suspicions surfaced that some ACORN canvassers were submitting falsified voter-registration applications. *Id.* at ¶ 41. Hayden and other ACORN officials provided the Elections Division with potentially defective applications and the identities of the canvassers who had submitted them. *Id.* At Hayden's direction, some ACORN employees were terminated in connection with these applications. *Id.* at ¶ 42. Other ACORN employees resigned after being confronted with allegations that they had acted improperly. *Id.* These personnel changes were reported to the Elections Division. *Id.*

In October 2008, as the general election approached, detectives employed by Allegheny County requested information from ACORN concerning thirty of its canvassers. *Id.* at ¶ 43. The number of canvassers subject to this inquiry was eventually narrowed to thirteen. *Id.* By that time, the canvassers were no longer employed by ACORN. *Id.* ACORN provided the detectives with the employment records for eleven of these individuals. *Id.* at ¶ 44. The remaining two individuals had apparently never been employed by ACORN. *Id.*

The investigation continued after the election. On May 7, 2009, Allegheny County District Attorney Stephen Zappalla ("District Attorney") filed criminal charges against five former ACORN employees and two other individuals, alleging that they had committed criminal offenses in connection with the submission of fraudulent voter-registration applications.[2] *Id.* at ¶ 46. All five of the former ACORN employees had either resigned or been terminated because of

---

[2] It is not clear whether the two individuals charged on May 7, 2009, who had never been employed by ACORN were the same two individuals who had been identified by Allegheny County detectives as being among the thirteen individuals subject to the original information request.

suspicions that they had engaged in improper conduct. *Id.* at ¶ 47. All seven individuals were charged, *inter alia*, with violations of 25 PA. CONS. STAT. § 1713, which provides:

> **§ 1713. Solicitation of registration**
> **(a) Prohibition.**–A person may not give, solicit or accept payment or financial incentive to obtain a voter registration if the payment or incentive is based upon the number of registrations or applications obtained.
> **(b) Penalty.**–A person who violates subsection (a) commits a misdemeanor of the third degree and shall, upon conviction, be sentenced to pay a fine of not less than $500 nor more than $2,500 or to imprisonment for not less than one month nor more than one year, or both.

25 PA. CONS. STAT. § 1713. These charges were based on language contained in "affidavits of probable cause" indicating that the ACORN employees had told detectives that they were working under a "quota" requiring each of them to procure a minimum number of voter-registration applications during the course of a work shift. Docket No. 38 at ¶ 53.

ACORN paid its canvassers at an hourly rate. *Id.* at ¶ 55. During the 2008 election season, ACORN's canvassers typically worked 6-hour shifts at a pay rate of $8.00 per hour. *Id.* at ¶ 56. A canvasser who completed a usual 6-hour shift was paid $48.00 regardless of the number of voter-registration applications obtained during the course of that shift. *Id.* Although canvassers were never compensated on the basis of their productivity, ACORN and Project Vote actively encouraged canvassers to meet an "aspirational" goal of securing 20 applications per shift. *Id.* at ¶ 58. Nevertheless, in 2008, roughly 81% of the canvassers failed to meet this goal. *Id.* at ¶ 59. The average canvasser procured only about 13 applications per shift. *Id.* The canvassers did not receive pay deductions because of their inability to meet production-based expectations. *Id.* at ¶ 58. Moreover, no canvasser was terminated solely because of his or her failure to meet the "aspirational" goal during a particular shift. *Id.* at ¶ 60. Instead, Hayden and

her subordinates worked with unproductive canvassers in order to improve their performance. *Id.* at ¶ 61.

On July 22, 2009, ACORN commenced the instant action against both the District Attorney and Tom Corbett, the Attorney General of Pennsylvania ("Attorney General"), seeking declaratory and injunctive relief against the enforcement of § 1713. Docket No. 1. ACORN alleged that § 1713, both on its face and "as applied" by the District Attorney, was in violation of the First and Fourteenth Amendments to the United States Constitution. *Id.* at ¶¶ 67-74. The District Attorney was subsequently dismissed from the case pursuant to a consent agreement that he had entered into with ACORN. Docket No. 18. The consent agreement was approved by the Court on October 27, 2009. Docket No. 19. Pursuant to the terms of the consent agreement, the District Attorney agreed not to prosecute ACORN under § 1713 until the entry of a non-appealable final order in this action, provided that ACORN continued to compensate its employees at an hourly rate and not on the basis of the number of voter-registration applications procured. *Id.* at ¶ 3. The District Attorney also agreed to be bound by the interpretation of § 1713 established by a final determination in this action.[3] *Id.* at ¶ 4. ACORN agreed to the voluntary dismissal of the District Attorney from this action pursuant to Federal Rule of Civil Procedure 41(a)(1). *Id.* at ¶ 5. The Court's jurisdiction over the District Attorney was retained only for the purpose of enforcing the consent agreement. *Id.*

ACORN announced on March 23, 2010, that it would be closing its offices in Pittsburgh on or before April 1, 2010. Docket No. 31 at ¶ 8. On April 15, 2010, ACORN sought leave to

---

[3] This term of the consent agreement is problematic, since federal courts lack the competence "to rule definitively on the meaning of state legislation." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 48, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997).

file an amended complaint for the purpose of adding Project Vote and Hayden as plaintiffs. *Id.* at ¶ 5. In support of its motion for leave to amend, ACORN relied on the language of Federal Rule of Civil Procedure 15(a)(2), which provides that leave to amend should be freely given "when justice so requires." *Id.* Two weeks later, the Attorney General filed a brief in opposition to ACORN's motion, contending that no live "Case" or "Controversy" existed between ACORN and himself in light of ACORN's decision to close its Pittsburgh offices. Docket No. 32 at 6-12. The Attorney General argued that ACORN no longer had standing under Article III to pursue this action, and that additional plaintiffs could not be added to a case over which the Court's jurisdiction had already lapsed.[4] *Id.*

After a telephone conference conducted with the parties on May 28, 2010, the Court granted ACORN's motion for leave to amend. Docket Nos. 36 & 37. Instead of premising its action on Rule 15(a)(2), however, the Court relied on Federal Rule of Civil Procedure 21, which provides:

> Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.

FED. R. CIV. P. 21. The Court relied on Rule 21, rather than on Rule 15(a)(2), because of the unresolved questions surrounding its subject-matter jurisdiction in this case. Docket No. 37 at 1. Specific reliance was placed on the fact that both the United States Supreme Court and the United States Court of Appeals for the Third Circuit had employed Rule 21 as a mechanism for

---

[4] At that stage, the Attorney General did not contend that a jurisdictional defect had resulted from the consent agreement dismissing the District Attorney from this case. Instead, he based his jurisdictional challenge solely on ACORN's decision to close its Pittsburgh offices. Docket No. 32 at 4-11.

curing perceived jurisdictional defects. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832-837, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989); *Mullaney v. Anderson*, 342 U.S. 415, 416-417, 72 S.Ct. 428, 96 L.Ed. 458 (1952); *Balgowan v. New Jersey*, 115 F.3d 214, 216-218 (3d Cir. 1997).

ACORN filed its first amended complaint on June 7, 2010, adding Project Vote and Hayden as plaintiffs. Docket No. 38 at ¶¶ 5-10. The Attorney General filed his answer on June 17, 2010. Docket No. 39. On July 16, 2010, the Attorney General filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[5] Docket No. 49. That motion is the subject of this memorandum opinion.

## III.  Standard of Review

The standard for deciding a motion for judgment on the pleadings filed pursuant to Federal Rule of Civil Procedure 12(c) is not materially different from the standard for deciding a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b).[6] *Revell v. Port Authority of New York & New Jersey*, 598 F.3d 128, 134 (3d Cir. 2010); *Christy v. We The People Forms & Service Centers, USA, Inc.*, 213 F.R.D. 235, 238 (D.N.J. 2003). Pursuant to Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a)(2). This essentially means that a complaint must contain sufficient factual

---

[5] "After the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c).

[6] Since the Attorney General filed a responsive pleading before challenging the sufficiency of the first amended complaint, the instant motion is based on Rule 12(c) rather than on Rule 12(b). *Revell v. Port Authority of New York & New Jersey*, 598 F.3d 128, 132, n. 7 (3d Cir. 2010); *Turbe v. Government of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __U.S.__, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Since the matter comes before the Court in this posture, the allegations contained in the first amended complaint are assumed to be true. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007).

## IV. Discussion

The inquiry required to resolve the pending motion for judgment on the pleadings is quite narrow. The Attorney General makes clear that, at this stage, he is not challenging the ability of the Plaintiffs to challenge § 1713 on its face. Docket No. 50 at 7-8. Instead, he merely seeks a judgment declaring that since the District Attorney has been voluntarily dismissed from this case pursuant to the consent agreement, the Plaintiffs cannot challenge § 1713 "as applied" by the District Attorney. *Id.* at 7-8. The Attorney General contends that while the District Attorney erroneously construed § 1713 broadly enough to prohibit entities such as ACORN and Project Vote from holding paid cavassers to production-based expectations, the statute is properly construed to prohibit only the direct payment of canvassers on a per-application basis. Docket No. 53 at 7. Since the Attorney General expressly disavows the District Attorney's construction of § 1713, he asserts that the Plaintiffs no longer have standing to challenge that statutory provision "as applied" by the District Attorney. *Id.* at 7-8. The Attorney General does not challenge the viability of the Plaintiffs' claims in a more general sense.

The first amended complaint attacks § 1713 as being violative of the First and Fourteenth

8

Amendments. Docket No. 38 at ¶¶ 73-79. The provisions of the First Amendment, of course, are applicable to the States by virtue of the Due Process Clause of the Fourteenth Amendment. *Virginia v. Black*, 538 U.S. 343, 358, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003). Nonetheless, the first amended complaint appears to reference the Fourteenth Amendment not only insofar as it makes the First Amendment applicable to the Commonwealth of Pennsylvania, but also for the purpose of asserting claims under the Due Process Clause that are separate and distinct from the Plaintiffs' First Amendment claims. For instance, the Plaintiffs aver that § 1713 is unconstitutionally vague and overbroad. Docket No. 38 at ¶¶ 77-78. In this single count, the Plaintiffs advance two distinct types of claims. The Due Process Clause "requires a penal statute to define the [relevant] criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). In the First Amendment context, a law may be attacked as "impermissibly overbroad because a 'substantial number' of its applications are unconstitutional" when judged "in relation to the statute's plainly legitimate sweep."[7] *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449, n. 6, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008); *New York v. Ferber*, 458 U.S. 747, 769-771, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982); *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Although these distinct

---

[7] A plaintiff mounting a "typical facial attack" against a statute must establish that no set of circumstances exists under which the statute could be constitutionally applied, or that the statute lacks a "plainly legitimate sweep." *United States v. Stevens*, ___U.S.___, 130 S.Ct. 1577, 1587, 176 L.Ed.2d 435 (2010); *Washington v. Glucksberg*, 521 U.S. 702, 740, n. 7, 117 S.Ct. 2302, 138 L.Ed.2d 772 (1997)(Stevens, J., concurring in the judgments); *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). The standard is somewhat less demanding where a plaintiff brings a facial challenge against a statute specifically alleged to be in violation of the First Amendment. *Stevens*, 130 S.Ct. at 1587.

legal principles can both be implicated by the same sequence of events, they are not to be treated as if they were "substantially redundant."[8] *Holder v. Humanitarian Law Project*, ___U.S.___, 130 S.Ct. 2705, 2719, 177 L.Ed.2d 355 (2010). In a separate count, the Plaintiffs mount both facial and as-applied challenges to § 1713 under the First Amendment. Docket No. 38 at ¶¶ 73-76. These claims appear to be based on *Meyer v. Grant*, 486 U.S. 414, 415-428, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988), in which the Supreme Court held that the First Amendment protects one's right to use paid canvassers for the purpose of obtaining enough signatures to invoke a State's initiative process. The Plaintiffs also purport to advance claims under the Due Process Clause pursuant to the Supreme Court's admonition in *Bouie v. City of Columbia*, 378 U.S. 347, 352, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964), that "a deprivation of the right to fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language." Docket No. 38 at ¶ 79.

The Attorney General does not expressly acknowledge the Plaintiffs' claims under the Due Process Clause. Instead, his motion for judgment on the pleadings targets only the

---

[8]The "vagueness" and "overbreadth" doctrines can be implicated by the same sequence of events because of the overlapping constitutional interests that they secure. The Supreme Court has observed that "the most important factor affecting the clarity that the Constitution demands of a law is [often] whether [that law] threatens to inhibit the exercise of constitutionally protected rights." *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). The "vagueness" of a law inhibiting expressive activities "raises special First Amendment concerns because of its obvious chilling effect on free speech." *Reno v. ACLU*, 521 U.S. 844, 871-872, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997). For this reason, the Supreme Court applies a more demanding standard to statutes which inhibit activities entitled to First Amendment protection than it does to statutes which inhibit only conduct that is clearly subject to proscription under a State's police power. *Village of Hoffman Estates*, 455 U.S. at 499-500. Nevertheless, the "vagueness" and "overbreadth" doctrines are separate legal doctrines requiring separate judicial analyses. *United States v. Williams*, 553 U.S. 285, 304, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008)("Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment."). A clearly worded prohibition can be overbroad. *Holder v. Humanitarian Law Project*, ___U.S.___, 130 S.Ct. 2705, 2719, 177 L.Ed.2d 355 (2010)(observing that while "a plaintiff whose speech is clearly proscribed cannot raise a successful vagueness claim under the Due Process Clause of the Fifth Amendment for lack of notice," "[s]uch a plaintiff may have a valid overbreadth claim under the First Amendment"). Similarly, a statute may be unconstitutionally vague even if it does not implicate a substantive constitutional right. *City of Chicago v. Morales*, 527 U.S. 41, 52-60, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999)(plurality opinion).

Plaintiffs' as-applied challenge to § 1713 *under the First Amendment*. Docket No. 49 at 1; Docket No. 50 at 3; Docket No. 53 at 3, 8. Consequently, the Court expresses no opinion as to whether the Plaintiffs' claims under the Due Process Clause remain viable in light of the District Attorney's voluntary dismissal from this case. Since the Attorney General's filings reference only the Plaintiffs' First Amendment claims, the Court will confine its inquiry to those claims in resolving the pending motion.

In support of their position that the Attorney General's motion should be denied, the Plaintiffs call the Court's attention to the Supreme Court's recent decision in *Citizens United v. Federal Election Commission*, ___U.S.___, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010). Docket No. 51 at 1-7. In *Citizens United*, the Supreme Court declared:

> [T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge. The distinction is both instructive and necessary, for it goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint. See *United States v. Treasury Employees*, 513 U.S. 454, 477-478, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995)(contrasting "a facial challenge" with "a narrower remedy"). The parties cannot enter into a stipulation that prevents the Court from considering certain remedies if those remedies are necessary to resolve a claim that has been preserved.

*Citizens United*, 130 S.Ct. at 893. Given the Supreme Court's observation that the distinction between facial challenges and as-applied challenges "goes to the remedy employed by the Court" rather than to "what must be *pleaded* in a complaint," the Plaintiffs contend that this distinction cannot serve as the basis for a judgment *on the pleadings*. Docket No. 51 at 1-2. In his reply

brief, the Attorney General makes no reference to *Citizens United*.⁹ Docket No. 53. Instead, he argues in very general terms that he should not be required to defend claims relating solely to the conduct of the District Attorney. *Id.* at 8.

"[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 185, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). For this reason, a party may have standing to seek monetary relief but lack standing to seek prospective relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 109-113, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Toll Bros., Inc. v. Township of Readington*, 555 F.3d 131, 138, n. 5 (3d Cir. 2009). The declaratory and injunctive relief sought by the Plaintiffs in this action is prospective in nature. The Attorney General does not challenge the Plaintiffs' standing to seek prospective relief. Instead, he challenges their standing only to the extent that their claims are related to the District Attorney's broad construction of § 1713. Docket No. 49 at 1; Docket No. 50 at 1-8; Docket No. 53 at 1-9. The Supreme Court's reasoning in *Citizens United*, however, leads to the conclusion that a First Amendment "claim" remains a single "claim" even where a plaintiff challenges an enactment both on its face and "as applied" to the specific facts at issue. *Citizens United*, 130 S.Ct. at 893. Since the Attorney General concedes (at least at this stage) that the Plaintiffs have standing *both* to advance their First

---

⁹The Attorney General references a law review article authored by Professor Richard H. Fallon that is cited in the Plaintiffs' brief. Docket No. 51 at 3-5; Docket No. 53 at 3-6; Richard H. Fallon, *As-Applied and Facial Challenges and Third-Party Standing*, 113 HARV. L. REV. 1321, 1339 (2000). The Plaintiffs apparently cite Professor Fallon's article because it was cited by the Supreme Court in *Citizens United v. Federal Election Commission*, ___U.S.___, 130 S.Ct. 876, 893, 175 L.Ed.2d 753 (2010). According to the Attorney General, Professor Fallon's article "does not really stand for the proposition that there is never a reason to distinguish between as-applied and facial constitutional challenges." Docket No. 53 at 3-4 (footnote omitted). Nonetheless, the Court does not understand the Plaintiffs to argue that there is *never* a reason to distinguish between as-applied and facial challenges. Instead, the Plaintiffs maintain that the distinction "goes to the breadth of the remedy employed by the Court" rather than to "what must be pleaded in a complaint," which is exactly what the Supreme Court stated in *Citizens United*. Docket No. 51 at 1-2; *Citizens United*, 130 S.Ct. at 893.

Amendment "claims" *and* to seek prospective relief, the Court has no basis for granting his motion for judgment on the pleadings. *Coastal Outdoor Advertising Group, LLC v. Township of Union*, 676 F.Supp.2d 337, 345 (D.N.J. 2009)("Whether as-applied or facial in character–a point of great dispute between the parties–Coastal must demonstrate Article III standing to challenge the former ordinance.").

At the present time, the Attorney General does not question the ability of the Plaintiffs to mount a facial challenge to § 1713. Docket No. 50 at 7. The facial invalidation of a statute constitutes "strong medicine" that should be employed "only as a last resort." *National Endowment for the Arts v. Finley*, 524 U.S. 569, 580, 118 S.Ct. 2168, 141 L.Ed.2d 500 (1998); *Broadrick*, 413 U.S. at 613. It would make little sense for the Court to rule out less drastic remedies (such as declaratory or injunctive relief on an as-applied basis) while permitting the Plaintiffs to challenge § 1713 on its face. Since "[t]he parties cannot enter into a stipulation that prevents the Court from considering certain remedies if those remedies are necessary to resolve a claim" that has been properly presented, it follows *a fortiori* that the *contested* motion pending before the Court should not be granted under the present circumstances.[10] *Citizens United*, 130 S.Ct. at 893.

V.     **Conclusion**

For the foregoing reasons, the Attorney General's motion for judgment on the pleadings will be denied. Nevertheless, the Attorney General remains free to argue that the voluntary dismissal of the District Attorney from this case precludes the Plaintiffs from pursuing certain

---

[10] A great deal of uncertainty would result if the Court were to grant the Attorney General's motion for judgment on the pleadings. In his reply brief, the Attorney General acknowledges that he cannot specifically identify the claims that would remain in the case if his motion were to be granted. Docket No. 53 at 8, n. 4.

13

*remedies* at a later stage in this litigation.  Since the Attorney General does not question the ability of the Plaintiffs to challenge § 1713 on its face, the Court need not conduct a broader inquiry as to whether the Plaintiffs' *claims* remain viable in the aftermath of the consent agreement.  Given the Supreme Court's admonition in *Citizens United* that the distinction between facial and as-applied challenges "goes to the breadth of the remedy employed by the Court" rather than to "what must be pleaded in a complaint," the Attorney General cannot obtain a "judgment on the pleadings" under Rule 12(c) based *solely* on that distinction.  *Citizens United*, 130 S.Ct. at 893.  The Court holds nothing more.  The Attorney General's motion for judgment on the pleadings will be denied without prejudice.

BY THE COURT:

s/ Nora Barry Fischer
Nora Barry Fischer
United States District Judge

Dated: September 28, 2010

cc/ecf:  All counsel of record